**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANET DORIS SNYDER,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:15-1980** |
| | : | |
| **v.** | : | |
| | : | **(MANNION, D.J.)** |
| **NANCY A. BERRYHILL,** | | **(SAPORITO, M.J.)** |
| **Acting Commissioner** | : | |
| **of Social Security**[1] | : | |
| | : | |
| **Defendant** | | |

# M E M O R A N D U M

Pending before the court is the report and recommendation of Judge Saporito, (Doc. 16), recommending that plaintiff's appeal from the final decision of the Commissioner of Social Security be denied, and that the decision of the Commissioner be affirmed. Judge Saporito reviewed the record in this case pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act, ("Act"). 42 U.S.C. §§401-433, 1381-1383f. The plaintiff, Janet Doris Snyder, has filed objections and a brief in support.[2] (Doc. 17). The

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security as the defendant in this suit.

[2]Plaintiff is represented by counsel in this case. The court notes that since Judge Saporito stated the full procedural history of this case in his

Commissioner responded to plaintiff's objections. (Doc. 18). For the following reasons, the report and recommendation is **ADOPTED** and plaintiff's appeal of the decision of the Commissioner will be **DENIED**.

## I.    STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and

report, (Doc. 16), and since plaintiff did not object to it, the court will not repeat it herein.

recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999), Johnson, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

3

period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).


## II. RELEVANT MEDICAL EVIDENCE

Judge Saporito's report and recommendation ("R&R"), (Doc. 16, pp. 2-8), as well as the initial briefs of the parties, (Doc. 13, Doc. 14), contain a thorough review of the plaintiff's medical history. The plaintiff did not file any objections to Judge Saporito's factual determinations regarding her medical history, so they will be adopted. *See* Butterfield v. Astrue, 2010 WL 4027768, *3 (E.D.Pa. Oct. 14, 2010) ("To obtain *de novo* determination of a magistrate [judge's] findings by a district court, 28 U.S.C. §636(b)(1) requires both timely and specific objections to the report.") (quoting Goney v. Clark, 749 F.2d 5, 6 (3d Cir.1984)). The court will restrict its discussion below to the relevant

medical background as it pertains to the plaintiff's objections. Also, since the five-step legal framework for addressing a disability claim was properly stated in the R&R, (Doc. 16 at 11-12), and the findings of the ALJ at each step is in the record, (Doc. 10-2, at 21-29), the court incorporates by reference these portions of the R&R and the ALJ's decision.

## III.   DISCUSSION

The plaintiff raises two objections to the R&R claiming that Judge Saporito erred in his report with respect to his following findings about the Administrative Law Judge ("ALJ"): (1) the judge erred in finding that the ALJ's error at step two was harmless and, erred by "supplying his own reasoning to support the ALJ's decision rather than relying upon the ALJ's decision itself"; and (2) the judge erred in finding that the ALJ properly evaluated the opinions of Dr. Vegari and Dr. Shipkin. Specifically, plaintiff claims that Judge Saporito erred regarding the stated doctors' opinions by: a) "failing to analyze or address [her] argument regarding Dr. Vegari's opinion that [she] is limited to lifting five pounds"; b. "finding that Dr. Vegari's opinion regarding [her] concentration limitations was accounted for by limiting [her] to 'simple, routine, repetitive tasks'" since she states that "the ability to perform simple tasks is distinct from the ability to stay on task"; and c. "finding the ALJ[ ] properly analyzed Dr. Shipkin's opinion." (Doc. 17, p. 2).

The court will now discuss plaintiff's objections to the R&R.

At step two, the ALJ is required to find whether plaintiff has a severe medically determinable impairment or a combination of impairments that is severe. The ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical thoracic and lumbar spine, carpal tunnel syndrome, reflex sympathetic dystrophy of the lower extremities, sacroiliitis, knee disorder, major depressive disorder, obesity and ankle/foot joint disorder. (Doc. 10-2, p. 21). The ALJ also found that plaintiff was diagnosed with a history of migraine headaches and hypertension but that they did not cause any functional limitations and were non-severe. The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

Plaintiff argues that Judge Saporito erred in evaluating her contention regarding the ALJ's alleged step two errors since she showed that the ALJ failed to consider her impairments of Guyon's tunnel syndrome and brachial plexus lesions at this step and how they related to her RFC assessment. In particular, plaintiff states that Judge Saporito erred by concluding that any step two errors by the ALJ were harmless since her claim was not denied at step two, by failing to consider her reliance upon Awad v. Colvin, Civ. A. No. 3:14-CV-1054, (M.D.Pa. April 21, 2015), a case in which the court remanded plaintiff's case to the Commissioner due to the ALJ's failure to properly

evaluate all impairments at step two, and by supplying his own reasoning for the failure of the ALJ to include limitations related to her Guyon's tunnel syndrome and brachial plexus lesions rather than relying upon the ALJ's decision itself. (Doc. 17, pp. 3-4).

Judge Saporito found, (Doc. 16, p. 17), as follows:

> In his decision, the ALJ properly accorded "significant" weight to all of Snyder's impairments including her alleged Guyon's tunnel syndrome and brachial plexus lesions. The ALJ reviewed the records of Dr. Feinstein where he concluded that Dr. Vegari's diagnosis of "brachial plexus lesions" were unbelievable and that there was absolutely nothing to confirm any evidence of carpel tunnel syndrome (CTS), or canal of guyon, ulnar nerve irritation at the wrist (Tr. 601). The ALJ considered the diagnosis stemming from these two impairments in making his decision, failure to list them at step two is harmless. Salles, 229 Fed. Appx. at 145. Limitations from Guyon's tunnel syndrome and brachial plexus lesions are similar to those of CTS, involving pain, numbness, and tingling in the wrists and hands. The ALJ properly assessed Snyder's alleged limitations relating to CTS in developing the residual functional capacity, and he properly took the symptoms of Guyon's tunnel and brachial lesions into consideration. Substantial evidence supports the ALJ's decision.

With respect to the ALJ's finding that plaintiff's concussion/headaches were not severe impairments, Judge Saporito found that "[w]hile the record shows that Snyder complained of frequent headaches and light sensitivity in 2012 (Tr. 337, 352), there is no evidence that shows any evidence of functional deficit." (Id. at 18). Judge Saporito also found that any failure of the ALJ to find plaintiff's headaches were severe at step two was harmless since the ALJ found in favor of plaintiff at step two when he found she had several

severe impairments" and since there was no likelihood that further review of this issue, i.e., the alleged erroneous conclusion that plaintiff's migraines were non-severe, could change the outcome in this case. Judge Saporito cited to Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007), and indicated that *Salles* held that "[b]ecause the ALJ found in Salles favor at step two, even if he erroneously concluded that some of her impairments were non-severe, any error was harmless." He also cited to 20 C.F.R. §416.945(a)(2)("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments which are not 'severe,' . . . when we assess your residual functional capacity".). (Id.).

"At step two of the sequential analysis, an individual seeking benefits under the Act bears the burden of proving that he suffers from 'a medically severe impairment or combination of impairments.'" Alvarado v. Colvin, 147 F.Supp.3d 297, 310 E.D.Pa. 2015) (citation omitted). "An impairment is 'severe' when it is 'of a magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.'" Id. at 310-11 (citation omitted). "An impairment is not severe if it does not significantly limit or has only a minimal effect on a claimant's physical or mental ability to do basic work activities." Id. at 311 (citation omitted).

Based on the record, the ALJ did not err in step two and properly

8

considered plaintiff's Guyon's tunnel syndrome and brachial plexus lesions. As defendant states, (Doc. 18, at 4), "[t]here is simply no support in the record evidence suggesting that Plaintiff's Guyon's tunnel syndrome and brachial plexus lesions impaired her ability to work." Also, as defendant points out, (Id.), both the ALJ and Judge Saporito thoroughly discussed plaintiff's Guyon's tunnel syndrome and brachial plexus lesions conditions. In fact, after plaintiff was examined by Peter A. Feinstein, M.D., he opined that Dr. Vegari's diagnosis of brachial plexus lesions was "truly unbelievable", (Tr. 596), and that there was "absolutely nothing to confirm any evidence of . . . Canal of Guyon ulnar nerve irritation at the [plaintiff's] wrist." He also opined that there was "absolutely nothing to confirm evidence of brachial plexopathy, and to assert that is one of the [plaintiff's] diagnoses is patently ludicrous." (Tr. 601-02).[3]

The ALJ discussed plaintiff's medical tests, including her EMG's of her upper extremities, and stated that they showed plaintiff had "left ulnar peripheral neuropathy consistent with Guyon's tunnel syndrome. (Doc. 10-2, at 25). The ALJ also stated that in October 2013 Dr. Vegari assessed her with degenerative disc disease of her spine as well as other conditions, including brachial plexus lesions. The ALJ then considered these findings based on the medical opinions in the record. (Id., at 26-27). Judge Saporito found that the

---

[3]"TR." refers to the SSA transcript found at Doc. 10.

ALJ "properly took [plaintiff's] symptoms of Guyon's tunnel syndrome and brachial lesions into consideration." (Doc. 16, at 17). In light of the record and the above case law, the court also finds that the ALJ properly considered plaintiff's Guyon's tunnel syndrome and brachial plexus lesions.

Additionally, as the court in Alvarado, 147 F.Supp.3d at 311, explained:

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Additionally, the analysis at step two is wholly independent of the analysis at later steps. Accordingly, not finding certain impairments severe at step two does not affect the ultimate disability determination. Where an ALJ finds in a claimant's favor at step two, "even if he ... erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless." Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007).

Further, under the regulations, in assessing a claimant's RFC prior to step four, the ALJ considers the symptoms of all medically determinable impairments, whether they are found severe or non-severe at step two. *See* 20 C.F.R. §404.1545.

Thus, as Judge Saporito found, even if the ALJ failed to specifically list plaintiff's Guyon's tunnel syndrome and brachial plexus lesions at step two, importantly, "[t]he ALJ considered the diagnosis stemming from these two impairments in making his decision." (Doc. 16, at 17). Judge Saporito also found that any error was harmless because the ALJ did not deny plaintiff benefits at step two of the sequential evaluation process. This court finds that

the *Salles* case is more persuasive with respect to the instant case than the *Awad* case, 2015 WL 1811692 (M.D.Pa. Apr. 21, 2015), on which plaintiff relies. As the defendant indicates, (Doc. 18, at 5-6), the *Awad* case is distinguishable from the instant case since the *Awad* "decision focused on an ALJ's failure to 'acknowledge or discuss numerous diagnoses', 2015 WL 1811692, at *16," and "[t]hat is not the case here, where the ALJ twice discussed Guyon's tunnel syndrome (Tr. 24, citing Ex. 8F at 74, 11F at 12, 87), and discussed Plaintiff's brachial plexus lesions multiple times (Tr. 24, 25, citing Ex. 8F at 4, 52, Ex. 11F at 3; Tr. 335, 383, 462)." The court finds that the present case is similar to Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005), where the Third Circuit found it harmless error when ALJ only indirectly considered claimant's obesity since it would not affect the outcome of the case and the record indicated that the ALJ relied on claimant's medical evidence to support his findings regarding claimant's limitations and impairments. *See also* Wells v. Acting Commissioner of Social Security, 2016 WL 6824369235, *4 (D.N.J. Nov. 18, 2016) (court found that failure of ALJ to include plaintiff's cervical radiculopathy and left knee post-traumatic arthritis as severe impediments was harmless error because the ALJ allowed plaintiff's claim to proceed past step two and the ALJ considered these two conditions in making the RFC determination.).

No doubt that the ALJ must "consider all ... medical determinable

impairments ... including [those] that are not 'severe'" when he assessed plaintiff's RFC. *See* 20 C.F.R. §404.1545(a)(2); SSR 96-8p. As discussed, the ALJ's decision repeatedly referenced plaintiff's diagnoses Guyon's tunnel syndrome and brachial plexus lesions. Thus, the Court finds that the ALJ did properly consider plaintiff's Guyon's tunnel syndrome and brachial plexus lesions in making his RFC determination and he explained the basis for his conclusions as required. *See* Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (the ALJ is required to "consider and evaluate the [relevant] medical evidence in the record" and, to discuss and weigh this evidence).

Moreover, the plaintiff states that "the R&R supplies its own reasoning for [the ALJ's failure] to include limitations related to Guyon's tunnel syndrome and brachial plexus lesions rather than relying upon the ALJ's decision itself in violation of the Chenery Doctrine." (Doc. 17, at 5) (citing SEC v. Chenery Corporation, 318 U.S. 80 (1943). Judge Saporito stated that the ALJ considered the plaintiff's diagnosis related to Guyon's tunnel syndrome and brachial plexus lesions and that limitations from these two conditions were "similar to those of CTS [carpal tunnel syndrome], involving pain, numbness, and tingling in the wrists and hands." (Doc. 16, at 17). Plaintiff states that since the ALJ did not make the analysis which Judge Saporito did, namely, "comparing the functional limitations of Guyon's tunnel and brachial plexus lesions to that of carpal tunnel syndrome", "the court may not undertake such

an analysis now." (Doc. 17, at 6). She then states that the ALJ failed to discuss or consider the two impairments and failed to include functional limitations from these impairments.

It is clear that the court cannot rectify the failure of an ALJ to consider all of the relevant and probative evidence "by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ." Fargnoli, 247 F.3d at 44 n. 7 (citing Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)); Marbury v. Astrue, 2010 WL 3220039, *6 (W.D.Pa. August 12, 2010) ("the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision."). The court must limit its consideration to what is plain in "the four corners of the ALJ's decision." Marbury v. Astrue, 2010 WL 3220039, *6.

As analyzed above, the court finds that the ALJ did thoroughly discuss plaintiff's Guyon's tunnel and brachial plexus lesions impairments, (Doc. 10-2, at 24-26), and, did consider them when deciding her functional limitations regarding all of her impairments. Judge Saporito found that the ALJ assessed plaintiff's symptoms from Guyon's tunnel and brachial plexus lesions and considered them in formulating her RFC and, that the ALJ's reasoning regarding the plaintiff's limitations from all of her conditions can be discerned from his decision.

As such, plaintiff's first objection to Judge Saporito's report will be overruled.

Next, plaintiff contends that Judge Saporito erred by finding that the ALJ properly evaluated the opinion evidence of two physicians, particularly, the opinions of her neurologist Matt M. Vegari, M.D. that she is limited to lifting five pounds and that she has trouble concentrating, as well as the opinion of Paul M. Shipkin, M.D., a neurologist who performed an Independent Medical Exam ("IME") of plaintiff, that she was capable of at least full or part-time sedentary work as opposed to light work which the ALJ found she could perform. Plaintiff also contends that the ALJ failed to incorporate these opinions into his RFC assessment.

With respect to Dr. Vegari's opinions, plaintiff argues that the ALJ should have given controlling weight to her doctor's opinion that she could only lift five pounds, and that Judge Saporito incorrectly concluded that her concentration limitations found by Dr. Vegari were properly accounted for in the ALJ's Residual Functional Capacity ("RFC") assessment.[4]

The ALJ thoroughly discussed plaintiff's exams and treatment with Dr. Vegari in his decision, (Doc. 10-2, at 24-26). The ALJ found that while Dr. Vegari opined that plaintiff was disabled and limited to lifting, pushing and

_____

[4]Since the ALJ's RFC finding is found at Doc. 10-2, at 23, as well as Judge Saporito's report, (Doc. 16, at 13-14), it shall not be repeated herein.

pulling up to five pounds, he gave "little to no weight to this opinion since there is no functional assessment or other credible basis with which to support such significant limitations." (Id., at 27).

The court finds that Judge Saporito properly held that there was substantial evidence to support the ALJ's evaluation of Dr. Vegari's limitations since there was no support for these limitations and there was ample contradictory evidence in the record. Judge Saporito pointed out that both Peter Feinstein, M.D., who performed an orthopedic IME of plaintiff, and whose opinion was afforded great weight by the ALJ, and Dr. Shipkin concluded that plaintiff was capable of work and that she could return to work. (Doc. 16, at 19). Judge Saporito also noted that the ALJ relied upon the opinion of Sharon A. Wander, M.D., a state agency physician, who found that plaintiff had the RFC to perform work at the light exertional level with limitations. (Id., at 21). Judge Saporito then concluded that Dr. Vegari "did not evaluate the demands of [plaintiff's] job even with limitations, but only opined that she was 'totally disabled' after noting that she has had a series of cervical and lumbar facet injections with improvement of pain and spasm." (Id.).

Thus, Judge Saporito properly held that there was substantial evidence to support the ALJ's conclusion that there was"no credible basis" to support Dr. Vegari's limitations.

Plaintiff also claims that Judge Saporito erred by finding that the ALJ

properly considered for Dr. Vegari's opinion with respect to her concentration limitations. However, as Judge Saporito noted, (Doc. 16, at 21), the ALJ limited plaintiff's RFC to "occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced environment, involving only simple, work-related decisions, and in general, relatively few work places changes." (Doc. 10-2, at 23). Judge Saporito then correctly concluded that the ALJ's RFC assessment "accounted for [plaintiff's] concentration and comprehension issues." (Id.).

Further, the court does not find that Judge Saporito substituted his own reasoning that the ALJ did not use as plaintiff suggests. (Doc. 17, at 11). Plaintiff points out that during her worker's compensation hearing, her counsel asked Dr. Vegari if her medication would affect her ability to comprehend or concentrate, (Tr. 243-44), and Dr. Vegari indicated that it would. However, defendant states that Dr. Vegari "provided no discussion at all of how [plaintiff] would be limited", and that "[t]he ALJ specifically found that there was very little in the record regarding Plaintiff's alleged mental problems (Tr. 25)." (Doc. 18, at 9). The ALJ also relied upon the determination of the state agency psychologist, Melissa Diorio, Psy.D., who found that plaintiff: "had no restrictions in activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation." (Doc. 10-2, at 27).

Indeed, plaintiff has not referred to any other evidence which shows that her comprehension and concentration limitations precluded her from working. Further, the ultimate decision as to plaintiff's RFC is an administrative finding for the ALJ to make. *See Gunder v. Astrue*, 2012 WL 511936, \*15 (M.D. Pa. Feb. 15, 2012) ("it is clear that an [ALJ] is responsible for making the ultimate determination regarding [RFC] and disability and need not accept a conclusory statement from a treating physician.") (citation omitted). Thus, plaintiff's stated objection will be overruled.

Plaintiff also maintains that Judge Saporito erred in finding that the ALJ properly evaluated Dr. Shipkin's opinion that she could perform sedentary work and not light work as the ALJ found she could perform. (Doc. 17, at 13-15). Plaintiff also contends that the ALJ did not properly apply Dr. Shipkin's opinion when assessing her RFC. Judge Saporito detailed the findings of Dr. Shipkin based on his IME exam of plaintiff. (Doc. 16, at 21-22). He then found that the ALJ's RFC assessment, including plaintiff's ability to perform light work, was supported by substantial evidence. Judge Saporito clearly evaluated Dr. Shipkin's opinion when he reviewed the ALJ's RFC assessment. Defendant also points out that plaintiff fails to account for "Dr. Shipkin's opinion in which he concluded that Plaintiff was capable of work at the medium exertional level (Tr. 615)." (Doc. 18, at 11, (Doc. 10-12, at 23).

As such, Judge Saporito correctly concluded the ALJ's decision that

plaintiff was capable of light work as well as his RFC assessment was supported by substantial evidence. The court concurs with Judge Saporito and finds that the ALJ properly considered the combined effect of all of plaintiff's impairments and symptoms. *See* Watson v. Astrue, 2012 WL 406374, *7 (E.D.Pa. Jan. 19, 2012) ("It is settled that the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.'" (citing Bailey v. Sullivan, 885 F.2d 52, 59–61 (3d Cir.1989); 42 U.S.C. §423(d)(2)(B); 20 C.F.R. §§ 404.1523, 416.923; and Social Security Ruling 96–8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'")).

Therefore, plaintiff's objections, (Doc. 17), to Judge Saporito's report, (Doc. 16), will be overruled, and the report will be adopted in its entirety.

## IV.    CONCLUSION

In light of the foregoing, Judge Saporito's report and recommendation, (Doc. 16), is **ADOPTED**, plaintiff's objections, (Doc. 17), are **OVERRULED**, and plaintiff's appeal, (Doc. 1), is **DENIED**. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: September 18, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1980-01.wpd